United States District Court
Southern District of Texas
**ENTERED**
March 28, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SAMI INAIMI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:21-CV-01832 |
| | § | |
| HARRIS COUNTY, TEXAS, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM & ORDER

The Court previously dismissed with prejudice Plaintiff Sami Inaimi's Fifth Amendment, punitive damages, and Texas Tort Claims Act claims. (Minute Entry dated Oct. 28, 2021.) The Court granted Mr. Inaimi leave to amend to "include specific factual allegations related to his Section 1983 claim," as well as factual allegations to support an Eighth Amendment claim, to the extent he intends to state one (*Id.*) In accordance with that Order, Mr. Inaimi filed his First Amended Complaint on Nov. 17, 2021, alleging excessive force in violation of the Fourth and Fourteenth Amendments, ratification, and failure to train and supervise. (Doc. 24.). He does not state an Eighth Amendment claim.

Defendant Harris County has filed a Motion to Dismiss Plaintiff's First Amended Complaint. For the reasons set forth below, the Court **GRANTS** the motion.

I.   ALLEGED FACTS

Mr. Inaimi alleges that two officers, employees of Defendant Harris County, Texas, transported him from a Harris County courtroom to his holding cell through the underground tunnel located in the basement of the courthouse. (Doc. 24, First Amended Complaint, ¶ 10-11.)

He alleges that the officers shackled his ankles during this commute even after the state judge ordered that he be released from Defendant's custody once he reached the holding cell, since his child support payment issues had been resolved. (*Id.*, ¶ 10, 12-13, 47.) Plaintiff asserts that he complained of the shackles being so tight that they were cutting through his skin, causing bleeding. (*Id.*, ¶ 15.) Nonetheless, he states, the agents forced him to continue walking and ignored his injuries. (*Id.*, ¶ 16.) He allegedly tripped and suffered a fall that caused him sharp pain in his hip. (*Id.*, ¶ 17-19.)

Because Mr. Inaimi became so impaired that he could no longer walk, the officers moved him to a wheelchair. (*Id.*, ¶ 20.) During the transport, he was allegedly informed that he had to move to a second wheelchair, by which point five (or so) additional officers had arrived to transport him. (*Id.*, ¶ 21-22.) Plaintiff allegedly told the officers that he could not stand up to switch wheelchairs, but one officer responded that no one would help him. (*Id.*, ¶ 23-24.) Plaintiff allegedly attempted to get up on his own but fell to the ground. (*Id.*, ¶ 26.) He asserts that at least one officer laughed at him and called him a "drama queen." (*Id.*, ¶ 27.) Plaintiff alleges that an officer forcibly picked him up and threw him into the seat of the second wheelchair. (*Id.*, ¶ 28.) The officers allegedly continued to mock him. (*Id.*, ¶ 30.)

Plaintiff states that he was taken to the medical clinic, where it was determined that he suffered two fractures to his left hip, vision loss in his right eye, and a neck fracture. He was brought to a hospital by ambulance and received hip surgery. (*Id.*, ¶ 31, 42.) He states that "[a]t no point during these events was [he] ever at risk to escape, or otherwise a threatening risk or danger to anyone or to any of the officers." (*Id.*, ¶ 34.)

Plaintiff alleges that Defendant's agents violated its mission and the law, including Chapter 9 of the Model Penal Code, Texas, Secs. 9.52 and 9.53. (*Id.*, ¶ 32-33.) He alleges that,

according to Harris County's statistics, there were over 3,000 use of force allegations made against the Harris County Sherriff's department in 2015, but that there have been "very few findings of unjustified force or firings as a result." (*Id.*, ¶ 37.) He discusses at length a June 2009 investigation by the United States Department of Justice ("DOJ") of the Harris County jail, which found that (1) Harris County permitted its employees to use significant force without review, and that (2) jail supervisors approved officers' use of force without investigating the need for that force. (*Id.*, ¶ 38- 41.)

## II. MOTION TO DISMISS

Now pending is Defendant's Motion to Dismiss Plaintiff's First Amended Complaint.

### A. Legal Standards

To establish municipal liability under 42 U.S.C. § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978)). An official policy "usually exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Piotrowski*, F.3d at 579 (citations omitted).

The Fifth Circuit has held that the *Twombly* standard applies to municipal liability claims. *Ratliff v. Aransas Cty., Texas*, 948 F.3d 281, 284–85 (5th Cir.), *cert. denied*, 141 S. Ct. 376, 208 L. Ed. 2d 97 (2020) (citing *Peña v. City of Rio Grande City*, 879 F.3d 613, 621–22 (5th Cir. 2018); *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 866 n.10 (5th Cir. 2012) (en banc)). That is, "[t]o proceed beyond the pleading stage, a complaint's

'description of a policy or custom and its relationship to the underlying constitutional violation cannot be conclusory; it must contain specific facts." *Pena*, 879 F.3d at 622 (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)) (alteration omitted).

### B. Whether Plaintiff Has Sufficiently Specified a Policy and Policymaker

Plaintiff attempts to establish municipal liability under three theories: (1) the existence of a custom, (2) failure to train, and (3) ratification.

#### i. Existence of a Custom

As to the first two prongs of the *Monell* standard, an official policy may be shown by demonstrating a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Hicks-Fields v. Harris County*, 860 F.3d 803, 810-11 (5th Cir. 2017) (citation omitted). The Fifth Circuit has emphasized that a custom can be inferred only from a pattern displaying "similarity and specificity" and involving "sufficiently numerous prior incidents, as opposed to isolated instances." *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009) (internal quotation marks and citation omitted). The Fifth Circuit has further instructed that the analysis whether such a pattern has been adequately pled is highly dependent on "context." *Id.* at 851–52 & n.4. In *Peterson*, for example, the Fifth Circuit found that twenty-seven incidents of excessive force over four years in a large police department did not amount to a custom, "[g]iven the department's size" and the fact that "the department conducted an internal investigation" into each incident, which "cut against the argument that the City condoned the use of excessive force." *Id.* at 852.

In this case, Plaintiff cites policies that he alleges Defendant's agents violated, including the Harris County Sheriff's Office's mission statement (to "[e]nhance the safety and protect the

trust of the citizens of Harris County by enforcing the law with integrity and professionalism"), as well as Texas Model Penal Code Sections 9.52 (on prevention of escape from custody) and 9.53 (on maintaining security in a correctional facility).

Moreover, Plaintiff alleges 3,000 incidents of excessive force in Harris County since 2015, "with very few findings of unjustified force or firings as result." (Doc. 24, First Amended Complaint, ¶ 37.) He cites no specific factual authority for this allegation. Neither does he specify whether this allegation relates solely the jail or includes patrol allegations of excessive force in Harris County over the last seven years.

Finally, Mr. Inaimi cites a 2009 DOJ report on use of force in the jail. (*Id.*, ¶ 38). The operative pleading note lists four examples that took place from January to June 2008 involving the grabbing of inmates, a headlock, strikes to the rib cage, and the failure to report a use of force incident. Doc. 24 at 9. A plaintiff's reliance on the same report was recently deemed insufficient to plausibly allege a failure to train, discipline, and supervise claim under Section 1983 against a sheriff:

> *Plaintiff's claims rely on a 2009 Department of Justice ("DOJ") report, which investigated the use of force in the Harris County Jail, and other excessive force cases. In reference to the 2009 DOJ report, the Court previously warned Plaintiff that he "may not proceed with this case without evidence beyond a bureaucratic report from 2009" and that he "must focus on facts and not clutter his complaint with citations and quotes." However, Plaintiff continues to heavily reference the 2009 DOJ report and other excessive force cases.*

*Henderson v. Harris Cty.*, No. 4:18-CV-413, 2021 WL 1112400, at *4 (S.D. Tex. Feb. 24, 2021), *report and recommendation adopted*, No. 4:18-CV-00413, 2021 WL 1111104 (S.D. Tex. Mar. 23, 2021) (granting defendant's motion to dismiss and dismissing with prejudice). While that was not a determination on a *Monell* claim, the Court notes *Henderson*'s reasoning as to the DOJ report's lack of specificity.

Without minimizing the seriousness of Plaintiff's allegations, the Court must find that he fails to establish a custom. It is true that Plaintiff cites existing policies that Defendant's agents allegedly violated. But that falls far short of identifying a policy for the purposes of finding municipal liability. Moreover, Plaintiff alleges over 3,000 excessive force complaints in Harris County since 2015, but provides no details on these complaints, including when they occurred and whether they involved similar circumstances. The DOJ report similarly fails to establish a pattern displaying "similarity and specificity" and involving "sufficiently numerous prior incidents, as opposed to isolated instances." *Peterson*, 588 F.3d at 851. The examples listed occurred fourteen years ago and were based on incidents that involved different factual scenarios; none involved, for example, the shackling of an inmate or the transportation of an inmate via wheelchair.

Because Plaintiff has failed to sufficiently allege a "custom that fairly represents municipal policy," this claim is **DISMISSED WITHOUT PREJUDICE**.

    ii.    *Failure to Train*

Plaintiff also argues that a policy may be inferred based on Defendant's failure to train or supervise. The failure to train municipal employees may also constitute a "policy," but only when it "reflects a 'deliberate' or 'conscious' choice by a municipality." *City of Canton v. Harris,* 489 U.S. 378, 389 (1989). Thus, although municipalities are not normally liable for inadequate training of employees, failure to properly train constitutes an actionable "policy" if, "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390.

To find Harris County liable on a failure to train or supervise theory, plaintiffs must show: "(1) the training or . . . [supervising] procedures of the municipality's policymaker were inadequate, (2) the municipality's policymaker was deliberately indifferent in adopting the . . . training [or supervising] policy, and (3) the inadequate . . . training [or supervising] policy directly caused the plaintiffs' injury." *Pineda v. City of Houston,* 124 F.Supp.2d 1057, 1078 (S.D. Tex. 2000) (quoting *Conner v. Travis Cty*, 209 F.3d 794, 796 (5th Cir. 2000). "To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (quotation omitted); *see also Sanders–Burns v. City Of Plano,* 594 F.3d 366, 382 (5th Cir. 2010) ("Claims of inadequate training generally require that the plaintiff demonstrate a pattern of conduct.").

Here, Plaintiff sufficiently alleges that Defendant maintained inadequate training procedures on the shackling of inmates during transport, and that these inadequate procedures caused Plaintiff's injuries. (*See* Doc. 24, First Amended Complaint, ¶ 52-57.) However, Plaintiff has failed to satisfy the deliberate indifference prong because, as discussed above, he has failed to demonstrate a pattern of similar and specific violations, *see Peterson*, 588 F.3d at 851; further, he has made only conclusory allegations as to whether the inadequacy of the training is obvious and obviously likely to result in a constitutional violation. Thus, the Court finds that Plaintiff has failed to plausibly allege a failure to train or supervise claim. The failure to train or supervise claim is **DISMISSED WITHOUT PREJUDICE**.

### *iii.* *Ratification*

Plaintiff also apparently attempts to state a ratification claim. As this Court has explained, it is "less than clear . . . whether ratification is a truly independent theory of municipal liability . . . or whether ratification is simply indicative of a pre-existing policy or custom." *Hobart v. City of Stafford*, 916 F. Supp. 2d 783, 794 (S.D. Tex. 2013) (Ellison, J.). In *Hobart*, this Court explained that it "doubt[ed] the propriety of holding municipalities liable on a ratification theory where the constitutional violation is excessive use of force," but "conclude[d] that this Circuit apparently tolerates such claims." *Id.* at 795. Ultimately, this Court adopted the position that a municipality "is not liable under the ratification theory where a Police Chief accepts his officers' version of events, so long as that version did not show that the deputies' actions were manifestly indefensible." *Id.* (internal quotation marks and citation omitted). And this Court further recognized that "the ratification theory applies only to extreme factual scenarios." *Id.* (internal quotation marks and citation omitted).

This case is not sufficiently "extreme" to support a ratification claim. The only recognized appellate case of the sort, *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985), involved the execution of an unarmed civilian bystander by a cadre of police officers in an "incompetent and catastrophic performance." *Id.* at 171. Likewise, in this Court's decision in *Hobart*, the plaintiff was a "civilian[ ] who died after an extraordinary number of gunshots were fired." 916 F. Supp. 2d at 796. This case, by contrast, involves a "non-fatal instance of excessive force" against an individual in Defendant's custody—albeit custody from which he would soon be released. *Heckford v. City of Pasadena*, No. 4:20-CV-4366, 2021 WL 2517405, at *5–6 (S.D. Tex. June 18, 2021) (Ellison, J.). Without minimizing the gravity of the conduct alleged in the First Amended Complaint, the Court cannot conclude that this case is as extreme

as those in which ratification claims have been allowed. Therefore, the ratification claim is **DISMISSED WITH PREJUDICE**.

### C. Whether Plaintiff Has Sufficiently Alleged a Constitutional Violation

The third *Monell* prong requires a showing that a policy was the moving force behind the violation of a constitutional right.

Plaintiff argues that he sufficiently alleged a claim of excessive force in violation of the Fourth and Fourteenth Amendments. To prevail on an excessive force claim, "the plaintiff bears the burden of showing: (1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable." *Cass v. City of Abilene*, 814 F.3d 721, 731 (5th Cir. 2016) (quoting *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000)). Here, Plaintiff has alleged (1) that he suffered serious injuries, including to his hip, eye, and neck; (2) that these injuries resulted directly and only from the use of excessive force by Defendant's agents in restraining and moving him; and (3) that the force was objectively unreasonable since he allegedly posed no danger, would be released immediately upon reaching his destination, and consistently complained of severe pain and requested assistance in vain.

While the Court finds that Mr. Inaimi has sufficiently alleged a constitutional violation in the form of excessive use of force, for the reasons stated above, he has failed to connect the alleged constitutional violation to any municipal policy.

\*     \*     \*

Defendant's Motion to Dismiss is **GRANTED**. Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE**, except his ratification theory, which is **DISMISSED WITH PREJUDICE**.

The Court will allow Plaintiff one more opportunity to amend his complaint to provide further factual allegations that, if taken as true, would show that he can meet the first two prongs of the *Monell* standard. If Plaintiff wishes to file an amended complaint, he must do so within two weeks of this Order.

**IT IS SO ORDERED.**

Signed at Houston, Texas on March 25, 2022.

                                                           _____
                                                           Keith P. Ellison
                                                           United States District Judge